UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BHAGUBHAI HIRA, PRADIP HIRA, and SHIRISH HIRA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:12-CV-373 Judge Phillips |
| NEW YORK LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

After two opportunities to revise their complaint, the plaintiffs now present a single claim of constructive fraud arising out of the purchase of a term life insurance policy twenty-five years ago [Doc. 52]. Defendant New York Life Insurance Company ("NYLIC") has moved for summary judgment [Doc. 55] with a supporting memorandum [Doc. 56], a statement of material facts [Doc. 57] and exhibits, plaintiffs have responded [Doc. 58] in opposition to the motion, and NYLIC has replied [Doc. 59]. Upon careful consideration of the pending motion and related pleadings, the Court finds that the motion for summary judgment [Doc. 55] should be **GRANTED**.

**I. Relevant Facts**

Plaintiff Bhagubhai Hira (hereinafter "Mr. Hira") purchased an increasing premium convertible term life insurance policy, No. 44 049 250, from NYLIC effective

October 15, 1990 ("the policy") [Doc. 52 at ¶ 3]. The policy contains a provision allowing the policy owner to convert the policy from a term life policy to a whole life policy without further proof of insurability [Doc. 55-1 at p. 7]. The policy's pertinent conversion provision states as follows:

> At any time on or before the final date for conversion shown in the Premium Schedule on the Policy Data page, this policy can be converted to a new policy which has the term policy date for its policy date. The premium for the new policy will be based on the Insured's age and our premium rates on the term policy date.
>
> When this conversion is made, we will need an extra payment. This extra payment will be the larger of the amounts in (a) or (b) where:
>
> (a) is the difference between the premiums (less any dividends) that would have been paid for the new policy and the premiums (less any dividends) actually paid for this policy, both accumulated at an annual interest rate of 6% compounded annually; and
> (b) is 103% of the reserve of the new policy as of the date of conversion.

[Doc. 55-1 at p. 7].

In October 1990,[1] Mr. Hira attended a sales presentation by NYLIC's agent, Thakor ("Ted") Champaneria [Doc. 52 at ¶ 4]. Mr. Champaneria testified that he explained the conversion provision to Mr. Hira, including the formulas for funding the reserve of the new policy [Doc. 58-3 at pp. 3—4]. Mr. Hira agreed that this provision was read to him by Mr. Champaneria [Doc. 55-2 at pp. 2—3]. Mr. Hira's sons, plaintiffs Pradip and Shirish Hira, both testified that they were present during the sales presentation, but did not participate in any conversations regarding the policy, nor did

---

[1] As set forth *infra* note 3, the Court assumes solely for purposes of summary judgment that Mr. Hira attended a sales presentation in October 1990 and received the policy in November 1990, rather than vice versa.

they participate in any subsequent conversations with Mr. Champaneria when the policy was delivered to Mr. Hira [Doc. 55-3 at pp. 2—3; Doc. 55-4 at pp. 2—3].

The policy includes a 10-day window in which the owner can cancel the policy and obtain a full refund [Doc. 55-1 at p. 1]. Mr. Hira acknowledges that he had a 10-day period to cancel the policy and during this time he consulted with agents from other insurance companies about the NYLIC policy and its conversion provisions [Doc. 55-2 at pp. 4—6].

On May 19, 2006, Mr. Hira transferred ownership of the policy to Pradip and Shirish Hira and gave them a copy of the policy [Doc. 55-3 at p. 4; Doc. 55-4 at p. 3]. On October 15, 2009, Pradip and Shirish Hira elected to convert the policy to a whole life policy [Doc. 52 at ¶ 13]. Upon this election, the plaintiffs received an Original Age Term Conversion Calculation ("OATC"), which illustrated the cost of conversion under the policy. According to the OATC, the cost for conversion under section (a), set forth above, was $21,727.96, and the cost for conversion under section (b), above, was $98,318.15.[2] Thus, pursuant to the conversion terms of the policy, the cost of conversion would be $98,318.15, the higher of the two conversion figures. The plaintiffs claim that at this point they "first discovered the constructive fraud of the defendant" [Doc. 52 at ¶ 14] and cancelled the policy.

---

[2] NYLIC has included these figures in the Statement of Undisputed Material Facts in Support of Motion for Summary Judgment [Doc. 57 at ¶ 14]. However, the exhibit referenced in support of this assertion does not contain these figures. Plaintiff has not objected to the figures or provided contrary evidence. Plaintiff's affidavit states that "the cost of conversion would be approximately $90,000.00" [Doc. 58-1 at p. 2]. Therefore, the Court will accept these calculations as true for purposes of summary judgment.

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C.*

4

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

#### A. Statute of Limitations

NYLIC first argues that plaintiffs' constructive fraud claim is barred by the statute of limitations in Tenn. Code Ann. § 28-3-105 [Doc. 56 at pp. 6—10]. As NYLIC points out in its reply brief [Doc. 59], plaintiffs do not directly respond to any of the summary judgment arguments made by NYLIC. Instead, plaintiffs contend there is evidence of "material issues of credibility" that must be resolved at trial [Doc. 58]. Specifically, plaintiffs point to Mr. Hira's affidavit and the testimony of his brother, Jagu Patel, that when they asked Mr. Champaneria to explain the 103% conversion provision, he told them not to worry about it; Mr. Champaneria denies making such a statement.

There is no dispute that the three-year statute of limitations in Tenn. Code Ann. § 28-3-105 applies to plaintiffs' constructive fraud claim. *See Jackson v. WMC Mortg. Corp.*, No. 2:12-cv-02914, 2013 WL 5550228, at *11 (W.D. Tenn. Oct. 8, 2013); *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 401 (Tenn. Ct. App. 2010). The statute begins to run "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered his injury and the cause thereof." *City State Bank v.*

5

*Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996). "The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). In the instant case, the critical issue is when Mr. Hira knew or should have known of the alleged fraud perpetrated by NYLIC's agent, Mr. Champaneria.

The second amended complaint alleges and Mr. Hira's affidavit states that he had no understanding of the cost of converting the policy to whole life until 2009 [Doc. 52 at ¶ 14; Doc. 58-1 at p. 2]. In his deposition, Mr. Hira was questioned as follows:

> Q: My question to you is was it read to you, the part that I'm marking here that I'm showing under conversion, Part A and B, was that read to you by Mr. Champaneria and Jagubhai?
> A: Yes.
> Q: And you understood –
> A: Yes.
> Q: -- that Part A and Part B were part of the formulas that would be used when converting the policy?
> A: Yeah, correct.

[Doc. 55-2 at pp. 2—3]. In his affidavit, Mr. Hira states that when the policy was delivered to him in November 1990,[3] he had his brother read the policy to him:

> When we reached the "conversion" provisions of the policy, I first became aware of the provision that I would have to pay 103 percent of the "reserve" of the new policy, if that price was larger than the difference in premiums,

---

[3] Mr. Hira's affidavit states that he first met with Mr. Champaneria "[i]n November, of 1990" to discuss the life insurance policy and that Mr. Champaneria later delivered the policy to Mr. Hira "the next month, October, 1990" [Doc. 58-1 at p. 1]. This cannot be correct. The Court therefore assumes, solely for purposes of summary judgment, that the initial meeting occurred in October 1990 and the policy was delivered to Mr. Hira in November 1990.

6

> in order to convert the policy. My brother and I both asked Mr. Champaneria to explain that provision to us, and he told us not to worry about it, as "you trust me." I had no understanding at that time about what the word "reserve" mean, or how much the "reserve" would be whenever I converted the insurance policy. And Mr. Champaneria did not explain to us, at that meeting, what the word "reserve" meant, or how much the "reserve" would be if I elected to convert the policy from term to "whole life" before I reached the age of 70.
>
> I did not obtain any such understanding until my sons converted the policy … in the year 2009.

[Doc. 58-1 at pp. 1—2].

As pointed out by NYLIC, it is well settled that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"). As later explained by the Sixth Circuit, this rule 'is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006). Whether or not Mr. Hira's affidavit "directly contradicts" his deposition testimony is a close question. *Id.* at 908. However, in light of the "knew or should have known" standard, the Court need not resolve this issue as it is clear from

7

both his deposition testimony and his affidavit that Mr. Hira was aware of the 103% conversion formula when he received the policy in 1990.

Mr. Hira testified that during the 10-day revocation period he consulted with agents from other insurance companies and discussed the conversion provision of his policy with them. Specifically, he testified as follows:

> Q: You spoke with the agents for these companies in 1990?
> A: Yes. …
> Q: Did you read the policy that you had with New York Life, or did you have your policy that you had with New York Life read to those agents over the phone?
> A: Yes. …
> Q: And did you read the part dealing with conversion to those agents over the phone?
> A: Yes. …
> Q: … Okay. What I'm asking about is did you read Part A and B of this conversion section to those agents over the phone?
> A: Yes.
> Q: Did they explain anything to you about Part A and B?
> A: Before they tell me, I told them.
> Q: Okay. Did they explain to you how Part A and Part B worked?
> A: Yes.

[Doc. 55-2 at pp. 4—5]. Mr. Hira also admitted that he could have cancelled the policy within the 10-day period and he did not do so [*Id*. at pp. 4—5]. As noted above, Mr. Hira's affidavit states that he "became aware of the provision that I would have to pay 103 percent of the "reserve" of the new policy, if that price was larger than the difference in premiums, in order to convert the policy" [Doc. 58-1 at p. 1]. His affidavit states that he asked Mr. Champaneria to explain the conversion provision to him. Thus, based on his conversation with Mr. Champaneria and with agents from other companies, Mr. Hira was clearly aware of the conversion formula and asked to have it explained to him. Mr.

8

Hira was put on notice that this was an issue and he was concerned enough about it to seek other opinions. Whether or not he understood that Mr. Champaneria's purported refusal to explain the conversion formula was fraudulent, he was admittedly aware of enough facts to put him on inquiry notice that he may have suffered an injury. *See Taylor v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2007-01774-COA-R3-CV, 2008 WL 5330502, at *8 (Tenn. Ct. App. Dec. 19, 2008) ("the discovery of a cause of action does not require the injured party to know that the injury constituted a breach of a legal obligation"). Thus, the Court finds that there is no genuine dispute that Mr. Hira knew or should have known of his cause of action when he received the policy in 1990. The statute of limitations ran in 1993 and this case was not filed until 2012, almost 20 years too late. Mr. Hira's claim of constructive fraud is time-barred and summary judgment is appropriate on this claim.

Similarly, the claims of Pradip and Shirish Hira are also time-barred. It is undisputed that Mr. Hira transferred the policy to his sons in 2006, that he gave them a copy of the policy and reviewed it with them [Doc. 55-3 at pp. 3—4; Doc. 55-4 at pp. 2—3]. Both Pradip and Shirish Hira testified that they had no conversations with anyone from NYLIC regarding the policy at the time Mr. Hira purchased it or at any time thereafter. Thus, to the extent that there was any misrepresentation or omission made about the policy, they knew or should have known about it in 2006. Their claims of constructive fraud are also time-barred.

9

### B. Standing

Alternatively, NYLIC argues that the plaintiffs lack standing to assert their claim [*Id*. at pp. 10—11]. Plaintiffs have not responded to this argument. As noted by NYLIC, to establish standing, a party must demonstrate (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180—81 (2000); *see City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013); *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001).

The injury of which plaintiffs complain is the unexpected cost of converting the policy from term life to whole life in 2009. However, Mr. Hira no longer owns the policy as it is undisputed that he transferred the policy to his sons in 2006. Thus, if the plaintiffs had not cancelled the policy, the cost of conversion would be borne by Pradip and Shirish Hira, not Mr. Hira. Mr. Hira has not suffered, nor will he suffer, an injury by NYLIC and therefore he has no standing to bring his claim.

Similarly, Pradip and Shirish Hira cannot show that their injury, the unexpected cost of converting the policy, was caused by NYLIC's conduct. Although the causation element "is not onerous, it does require a showing that the injury to a plaintiff is 'fairly traceable' to the conduct of the adverse party." *City of Memphis*, 414 S.W.3d at 98. Both Pradip and Shirish testified that they had no conversations with anyone from NYLIC regarding the policy at the time Mr. Hira purchased it or at any time thereafter. They did

not hear Mr. Champaneria's sales pitch regarding the policy and they were not signatories to the policy. Thus, their anticipated injury, the increased cost of converting the policy, is not "fairly traceable" to any alleged misrepresentation or omission by Mr. Champaneria. Accordingly, the Court finds that Pradip and Shirish Hira also lack standing to assert a constructive fraud claim.

### C. Constructive Fraud

Third, NYLIC argues that the constructive fraud claim fails as a matter of law because NYLIC had no duty to explain the plain language of the policy to the plaintiffs [*Id.* at pp. 11—14]. As with the two previous issues, plaintiffs have not responded to this argument. "Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39 (Tenn. Ct. App. 2006). Constructive fraud, also known as fraudulent concealment, is committed when "a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 652 (E.D. Tenn. 2011) (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009)). There is not, however, a duty to disclose "where ordinary diligence would have revealed the undisclosed fact." *Odom*, 310 S.W.3d at 349—50; *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986); *see also Robert J. Denley Co., Inc. v. Neal Smith Const. Co.*, No. W2006-00629-COA-R3-CV, 2007 WL 1153121, at *6 (Tenn. Ct. App. Apr. 19, 2007) ("[t]here is no duty to disclose a material fact if it was apparent

11

through 'common observation' or if it would have been discoverable through the exercise of ordinary diligence"). NYLIC argues that it had no duty to explain the conversion terms of the policy to Mr. Hira because he could have discovered them with ordinary diligence. The Court agrees.

As set forth above, Mr. Hira was plainly aware of the conversion provisions in the policy. He reviewed the provisions when he received the policy, he questioned Mr. Champaneria about them, and he consulted agents from other insurance companies about these provisions. When a person signs a contract in Tennessee, he is presumed to have read its contents. *Roopchan*, 781 F. Supp. 2d at 651. Based on the undisputed facts set forth above, Mr. Hira did read the policy (or had it read to him) and he discussed the specific provision at issue with multiple people. The provision was apparent to him through "common observation" and he exercised diligence in obtaining further information or explanation about the provision. Thus, Mr. Hira cannot say that he reasonably relied on Mr. Champaneria's purported refusal to explain the conversion formulas to him. *See Macon Cnty. Livestock Mkt., Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 351 (Tenn. Ct. App. 1986) ("[a] party cannot be permitted to claim that he has been taken advantage of if he had the means of acquiring the needed information or if … he should have acquired further information before he acted"). Mr. Hira's constructive fraud claim therefore fails as a matter of law.

Pradip and Shirish Hira were not signatories to the policy. It is undisputed that they did not participate in any discussions with Mr. Champaneria about the policy. Thus,

12

they could not have relied on any misrepresentation or omission by him about the conversion formulas. Their claims of constructive fraud also fail as a matter of law.

## IV. Conclusion

For all of the reasons set forth above, the Court finds that there are no genuine issues of material fact in dispute and that NYLIC is entitled to judgment as a matter of law. NYLIC's motion for summary judgment [Doc. 55] will be **GRANTED**. An appropriate order will be entered.

                                s/ Thomas W. Phillips  
                               SENIOR UNITED STATES DISTRICT JUDGE